Theodore W. Chandler (Bar No. 219456)
<Ted.Chandler@BakerBotts.com>
Baker Botts L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (213) 202-5702

[ADDITIONAL COUNSEL LISTED
ON SIGNATURE PAGE]

*Attorneys for Plaintiff KISS Nail Products, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KISS Nail Products, Inc.,<br>*Plaintiff*,<br>vs.<br>Ardell International, Inc.,<br>*Defendant*. | No. 2:26-CV-11118<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

1. This is an action for patent infringement arising under Title 35 of the United States Code of the laws of the United States of America.

## PARTIES

2. Plaintiff, KISS Nail Products, Inc. ("KISS"), is a company organized and existing under the laws of the State of New York in the United States of America and having an address of 25 Harbor Park Drive, Port Washington, New York 11050.

3. On information and belief, Defendant Ardell International, Inc. (hereinafter "Defendant") is a corporation organized and existing under the laws of the State of California.

4. On information and belief, Defendant has a place of business at 5862 West 3rd Street, Los Angeles, California 90036.

5. On information and belief, Defendant imports and distributes "Ardell Professional Press On Pre-Glued Underlash Extensions" in the United States.

6. On information and belief, Defendant imports and distributes "Winks by Ardell Press On Lash" products in the United States.

7. On information and belief, the packaging for the "Ardell Professional Press On Pre-Glued Underlash Extensions" and "Winks by Ardell Press On Lash" products (collectively, the "Accused Products") states that they were "Made in China," as depicted below.[1]

[1] American International Industries of Los Angeles, California, is identified on the packaging for the Accused Products. On information and belief, American International Industries had its status as a business in the State of California suspended by the Franchise Tax Board ("FTB") over twenty years ago. *See* https://bizfileonline.sos.ca.gov/search/business at Search Results for "American International Industries, Inc."

**Ardell Professional Press On Pre-Glued Underlash Extensions**




**Winks by Ardell Press On Lash**




8. The packaging for the Accused Products includes the "Ardell" trademark.

**Ardell Professional Press On Pre-Glued Underlash Extensions**

**Winks by Ardell Press On Lash**

9. On information and belief, Defendant is the current owner of the "Ardell" trademark.

**Current owner** Show in Case summary view

**Name**
Ardell International, Inc.

**Address**
5862 West 3rd Street,
Los Angeles California 90036
United States

**Entity type**
CORPORATION

**Organized**
United States

**Ownership transitions**
No assignments

*https://tmsearch.uspto.gov/search/search-results/98623384*.

## JURISDICTION AND VENUE

10. This action arises under the patent laws of the United States, Title 35 of the United States Code. KISS asserts a claim for patent infringement against Defendant arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).

11. On information and belief, this Court has general personal jurisdiction over Defendant because Defendant has engaged in business activities in and directed to this district; has imported, offered for sale, sold, and/or advertised eyelash products asserted by KISS to be covered by U.S. Patent No. 12,672,687 ("the '687 Patent," attached as Exhibit A to this Complaint); has committed the acts complained of herein in this district that led to foreseeable harm and injury to KISS; and has otherwise purposely availed itself of the privileges and benefits of the laws of the State of California.

12. The Statement of Information on record with the State of California, filed July 21, 2025, identifies 5862 West 3rd Street, Los Angeles, California 90036 as Ardell International, Inc.'s "Principal Address." *See* https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/233187085105127066041217134077030215021214093129.

13. On information and belief, Defendant's principal place of business is located at 5862 West 3rd Street, Los Angeles, California 90036.

14. On information and belief, Defendant also operates out of a 225,401 square foot warehouse located at 2220 Gaspar Ave, Commerce, California 90040. *See https://labormarketinfo.edd.ca.gov/aspdotnet/databrowsing/empDetails.aspx?menuChoice=emp&empid=987287752&geogArea=0604000037*; *https://www.propertyshark.com/mason/Property/127914233/2220-Gaspar-Ave-Los-Angeles-CA-90040/*.

15. Below is an image of the warehouse located at 2220 Gaspar Ave, Commerce, California 90040.




This image was obtained from Google Maps at the following link: *https://www.google.com/maps/place/Ardell+International+Inc/@34.0019445,-118.1515328,202a,35y,47.81h,57.82t/data=!3m1!1e3!4m6!3m5!1s0x80c2ce51ee9b38a9:0x69df2be0b80eeb16!8m2!3d34.0036467!4d-118.1484456!16s%2Fg%2F11c52kj8s0?entry=ttu&g_ep=EgoyMDI1MDMwOC4wIKXMDSoASAFQAw%3D%3D*.

16. On information and belief, Defendant conducts substantial business operations from 5862 West 3rd Street, Los Angeles, California 90036.

17. On information and belief, Defendant conducts substantial business operations from 2220 Gaspar Ave, Commerce, California 90040.

18. On information and belief, Defendant distributes, sells, and offers for sale the Accused Products throughout California.

19. On information and belief, Defendant distributes, sells, and offers for sale the Accused Products in this judicial district.

20. On information and belief, the Accused Products are available for purchase in brick-and-mortar Walgreens, CVS, Target, and Ulta Beauty stores throughout California.

21. On information and belief, the Accused Products are available for purchase in brick-and-mortar Walgreens, CVS, Target, and Ulta Beauty stores in this judicial district.

22. The following images show that Accused Products are available for purchase in brick-and-mortar Walgreens, CVS, Target, and Ulta Beauty stores in this judicial district.



*https://www.walgreens.com/store/c/ardell-naked-press-on-under-lash-extensions---natural/ID=300448502-product* at "Check other stores" link.




*https://www.cvs.com/shop/ardell-press-on-underlash-extensions-false-eyelashes-30-ct-with-applicator-prodid-7200954* at "Check more stores" link.




*https://www.target.com/p/ardell-press-on-false-eyelashes-kit-natural-30ct/-/A-89371887#lnk=sametab* at "Check other stores" link.




*https://www.ulta.com/p/naked-press-on-natural-lightweight-pre-glued-lashes-pimprod2043178?sku=2620230* at "Check store for pickup availability" link.

23. Through such sales, Defendant has purposely availed itself of the privilege of conducting business in this judicial district.

24. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b), because Defendant resides in this judicial district and has committed acts of infringement and has a regular and established place of business in this judicial district as evidenced by its physical presence from which Defendant manages and directs its business activities, including activities related to the Accused Products.

## FACTS

25. KISS is a leading supplier in the beauty care business, including creating and supplying innovative products for hair care to customers throughout the world, including this judicial district.

26. Among its line of innovative products, KISS sells its imPRESS Falsies eyelash product (the "imPRESS Falsies"). The imPRESS Falsies feature innovative technology that enables the first-ever press-on lash application, allowing users to apply false eyelashes in one step without the pain and skin irritation associated with conventional eyelash extensions.

27. The imPRESS Falsies have enjoyed substantial recognition in the industry as a pioneering advancement in do-it-yourself ("DIY") artificial eyelash technology and have achieved significant commercial success in the DIY lash market.

28. KISS is an innovator in the press-on lash market segment.

29. Some of KISS's innovations in the press-on lash market segment are recited in the claims of the '687 Patent and U.S. Patent No. 12,171,288 ("the '288 Patent").

30. The '687 Patent is a continuation of the '288 Patent.

31. The '288 Patent is a continuation of Paris Cooperation Treaty Application No. PCT/US2021/047200 ("'200 PCT").

32. The '200 PCT claims priority to U.S. Provisional Application No. 63/068,728 ("'728 Provisional").

33. The '687 Patent, the '288 Patent, and the '200 PCT share the same specification ("Shared Specification").

34. The Shared Application discloses eyelash extensions with pre-applied adhesive that enables press-on lash application.

35. As set forth in the Shared Specification, "[a]n advantage of the invention is that the eyelash extension system is ready to use without the need for any additional supplies such as glue."

36. As also set forth in the Shared Specification, "[a]n additional advantage of the invention is that the user can apply the invented eyelash extension system quickly and with one hand."

37. The '728 Application includes at least the following figures:




12
66
61
14
64
62
60


80
10
12
80
14
12
20


80
62
60
12
62
12

38. The figures in the preceding paragraph (¶ 37) depict examples of artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments.

39. The Shared Specification includes at least the following figures:







12
L
X
66
61
14
64
62
L
X
60


80
80
14
12
20
20
10
14
12


80
62
12
62
60
12

40. The figures in the preceding paragraph (¶ 39) depict examples of artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments.

41. Claim 1 of the ’728 Provisional recites, among other things, “an adhesive element applied to a plurality of the eyelashes at a position intermediate the bases and tips of the eyelashes.”

42. Claim 2 of the ’728 Provisional recites “[t]he system of claim 1 wherein the intermediate position is between 1/3 and 1/2 along the length of the eyelash away from the support strip.”

43. Claim 2 of the ’200 PCT recites “[t]he system of claim 1 wherein the adhesive is applied at a position between the support strip and one-half the eyelash filaments’ average length away from the support strip.”

44. The application for the ’288 Patent was U.S. Patent Application No. 17/409,705 (“’705 Application”).

45. As originally filed, Claim 2 of the ’705 Application recited “[t]he system of claim 1 wherein the adhesive is applied at a position between the support strip and one-half the eyelash filaments’ average length away from the support strip.”

46. The ’200 PCT published as WO 2022/040640 on February 24, 2022

47. The ’705 Application published as US 2022/0053862 on February 24, 2022.

48. As of at least February 24, 2022, members of the public could see that KISS was seeking patent claims directed to artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments.

49. KISS filed a complaint in the U.S. District Court for the Central District of California on March 31, 2025, alleging that Ardell infringed the ’288 Patent.

50. Ardell knew that KISS had sought, or was seeking, patent claims directed to artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments as of at least March 31, 2025.

51. The litigation resulting from KISS's March 31, 2025 complaint against Ardell was *KISS Nail Products, Inc. v. Ardell International, Inc.*, Case No. 2:25-cv-02793 (C.D. Cal.) ("*KISS v. Ardell I*")

52. The application for the '687 Patent was U.S. Patent Application No. 19/336,010 ("'010 Application").

53. The '010 Application was pending before the U.S. Patent and Trademark Office ("USPTO") during *KISS v. Ardell I*.

54. During the pendency of the '010 Application before the USPTO, KISS submitted to the USPTO all of the prior art references identified by Ardell during *KISS v. Ardell I*, as well as Ardell's invalidity contentions.

55. During the pendency of the '010 Application before the USPTO, the Examiner considered all of the prior art references identified by Ardell during *KISS v. Ardell I*, as well as Ardell's invalidity contentions, before allowing the claims.

56. The '288 Patent was asserted in three other district court litigations during the pendency of the application for the '687 Patent before the USPTO: (1) *KISS Nail Products, Inc. v. Original Additions (Beauty Products) Ltd d/b/a Eylure*, Case No. 2:25-cv-00321 (E.D. Tex.), (2) KISS Nail Products, Inc. v. Velour Cosmetics, Inc., Case No. 2:25-cv-00319 (E.D. Tex.), and (3) *NEXGEL, Inc. v. Kiss Nail Products, Inc.*, Case No. 2:25-cv-01828 (E.D. Pa.) (collectively, the "Other Litigations").

57. During the pendency of the '010 Application before the USPTO, the USPTO also considered the prior art references identified in the Other Litigations before allowing the claims.

58. During the pendency of the ’010 Application before the USPTO, the Examiner considered the Ardell Press On Lash 105 before allowing the claims.

59. During the pendency of the ’010 Application before the USPTO, the Examiner considered International Patent Publication No. WO 2018/022914 to Lotti (“Lotti ’914”) before allowing the claims.

60. During the pendency of the ’010 Application before the USPTO, the Examiner considered and cited to U.S. Patent No. 11,330,855 to Lotti (“Lotti ’855”) before allowing the claims.

61. Lotti ’914 and Lotti ’855 share the same specification.

62. During the pendency of the ’010 Application before the USPTO, the Examiner considered U.S. Patent Application Publication No. 2018/0242671 to Merszei before allowing the claims.

63. During the pendency of the ’010 Application before the USPTO, the Examiner considered and cited to U.S. Patent Application Publication No. 2021/0059339 to Lee (“Lee ’339”) before allowing the claims.

64. During the pendency of the ’010 Application before the USPTO, the Examiner considered U.S. Patent No. 8,061,367 to Rabe before allowing the claims.

65. During the pendency of the ’010 Application before the USPTO, the applicants successfully distinguished the issued claims of the ’687 Patent over Lotti ’855 and Lee ’339 before the USPTO allowed those claims to issue.

66. The ’687 Patent was duly and legally issued on July 7, 2026.

67. A true and correct copy of the ’687 Patent is appended hereto as Exhibit A.

68. The ’687 Patent issued in the name of KISS.

69. KISS is the owner of all rights, title, and interest in and to the ’687 Patent.

70. The ’687 Patent is valid and in full force and effect.

**DEFENDANT'S INFRINGING ACTIVITIES AND PRODUCTS**

71. On information and belief, Defendant has infringed and continues to infringe the '687 Patent by making, importing, using, selling, and offering for sale the Accused Products in the United States that embody or use the inventions claimed in the '687 Patent.

72. Exhibits B and C show that KISS obtained examples of Accused Products for inspection and analysis.

73. The accused "Ardell Professional Press On Pre-Glued Underlash Extensions" include "pre-glued" eyelash segments that come in at least four different styles—Active, Fauxmink, Naked, and Wispies—and at least five different volumes—Gainz, Natural, Natural 420, Soft Volume, and Volume.

74. Some examples of the different styles and volumes of the "Ardell Professional Press On Pre-Glued Underlash Extensions" are depicted below.












Press On Naked Soft Volume, 60-Count

$15.99

3.0 1 Review




Press On Wispies Natural, 100-Count

$22.99

0.0 No Reviews




Press On Naked Natural, 100-Count

$22.99

0.0 No Reviews




Press On Active Gainz 30 ct + Applicator

$12.99

0.0 No Reviews




Press On Wispies Volume 30 ct + Applicator

$12.99

0.0 No Reviews




Press On Wispies Natural 30 ct + Applicator

$12.99

5.0 1 Review




Press On Fauxmink Natural, 100-Count
$22.99
5.0 1 Review




Press On Wispies Natural, 60-Count
$15.99
0.0 No Reviews




Press On Fauxmink Natural, 60-Count
$15.99
1.0 1 Review




Press On Fauxmink Natural 30 ct + Applicator
$12.99
0.0 No Reviews




Press On Wispies Natural, Brown, 30-Count
$13.00
0.0 No Reviews




Press On Naked Soft Volume, 30-Count
$12.99
0.0 No Reviews




*https://ardellshop.com/collections/press-on?product_list_order=new.*

75. The eyelash segments of the accused "Ardell Professional Press On Pre-Glued Underlash Extensions" also come in at least three lengths—8 mm, 10 mm, and 12 mm—and in specially designed left and right—L and R, respectively—"inner" lash configurations.

76. An image of the different lengths and different left and right designs of the Naked Natural "Ardell Professional Press On Pre-Glued Underlash Extensions" is provided below, with red underlining added.




77. The accused "Winks by Ardell Press On Lash" includes "pre-glued" eyelash segments that come in at least two different styles—Galore and Slay—and at least two different volumes—Volume and Natural.

78. Examples of the different styles and volumes of the "Winks by Ardell Press On Lash" are depicted below.




Winks Press On 30 pc Natural + Applicator
$11.99
4.5 849 Reviews




Winks Press On 30 pc Volume + Applicator
$11.99
4.3 767 Reviews

*https://ardellshop.com/collections/winks*.

79. The eyelash segments of the accused “Winks by Ardell Press On Lash” also come in three lengths—10 mm, 12 mm, and 14 mm.

80. An image of the different lengths of the “Winks by Ardell Press On Lash” is provided below, with red underlining added.




81. On information and belief, the Naked Natural "Ardell Professional Press On Pre-Glued Underlash Extensions" and Slay "Winks by Ardell Press On Lash" are representative of the Accused Products with respect to KISS's allegations of infringement of the '687 Patent.

82. Regardless of style, length, configuration, or branding, each of the Accused Products comprises an artificial eyelash system, including a plurality of eyelash segments and a package configured to store the plurality of eyelash segments prior to sale to a user.

83. The eyelash segments, referred to on the package of the Accused Products as "clusters," are pre-glued.

84. Each of the Accused Products includes "pre-glued" eyelash segments where the width of each of the plurality of eyelash segments is a maximum of one-third the width of the user's natural eyelashes.

85. Within each of the Accused Products, there are a plurality of eyelash segments, and each of the plurality of eyelash segments comprises a plurality of eyelash filaments.

86. Each of the plurality of eyelash filaments within each of the eyelash segments of the Accused Products comprises a base, a tip, an upward-facing surface, and a downward-facing surface.

87. An adhesive element is disposed on the upward-facing surface of the plurality of eyelash filaments within each of the eyelash segments of the Accused Products at a location between the bases and half an average length of the plurality of eyelash filaments such that no portion of the adhesive element extends beyond half an average length of the plurality of eyelash filaments.

88. Each of the plurality of eyelash segments of each of the eyelash segments of the Accused Products further comprises a support strip.

89. Each of the plurality of eyelash filament bases of each of the eyelash segments of the Accused Products is attached to the support strip.

90. The "pre-glued" eyelash segments in each of the Accused Products include an adhesive element that is: i) spaced apart from the bases of the plurality of eyelash filaments in a direction of a length of the plurality of eyelash filaments; ii) adapted to adhere to an underside of the user's natural eyelashes without application of heat to the adhesive element; iii) adapted to adhere to an underside of the user's natural eyelashes without application of additional adhesive to the plurality of eyelash filaments or the user's natural eyelashes; and iv) applied before the plurality of eyelash segments are placed in the package.

91. Images of adhesive on examples of the Accused Products are provided below.

**Ardell Professional Press On Pre-Glued Underlash Extensions**

**Winks by Ardell Press On Lash**




92. The Accused Products infringe at least Claim 1 of the ’687 Patent.

93. An exemplary claim chart showing infringement of at least Claim 1 of the ’687 Patent by the Accused Products (“Ardell Professional Press On Pre-Glued Underlash Extensions”) is attached hereto as Exhibit B.

94. An exemplary claim chart showing infringement of at least Claim 1 of the ’687 Patent by the Accused Products (“Winks by Ardell Press On Lash”) is attached hereto as Exhibit C.

95. KISS has been damaged by Defendant’s infringing conduct and continues to be damaged by Defendant’s ongoing acts of infringement.

96. Defendant is a direct competitor of KISS in the DIY lash market.

97. Defendant’s Accused Products compete head-to-head with KISS’s imPRESS Falsies products.

98. Defendant’s sales of Accused Products directly displace sales of KISS’s imPRESS Falsies products that would have been made by KISS but for Defendant’s sales.

99. Defendant's infringing activities have caused and continue to cause KISS to suffer monetary damages, including but not limited to lost profits and lost market share.

**COUNT ONE (PATENT INFRINGEMENT)**

100. KISS repeats and realleges paragraphs 1 through 99 hereof, as if fully set forth herein.

101. On information and belief, Defendant has been and is infringing at least Claim 1 of the '687 Patent, literally or under the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Accused Products, in violation of 35 U.S.C. § 271. This infringement is shown, for example, in Exhibits B and C.

102. On information and belief, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 1 of the '687 Patent, by inducing and contributing to the infringement of others in the United States. For example, Defendant makes, imports, offers to sell, and sells within the United States Accused Products that, when used by customers as instructed by Defendant and according to their intended purpose, infringe at least Claim 1 of the '687 Patent.

103. On information and belief, Defendant provides detailed instructions, demonstrations, and support materials to its customers, directing them on how to apply and use the Accused Products in a manner that Defendant knows infringes one or more claims of the '687 Patent. Examples of such detailed instructions, demonstrations, and support materials are included on the packaging for the Accused Products.

104. Instructive illustrations from the packaging for the Accused Products are reproduced below.

**<u>Ardell Professional Press On Pre-Glued Underlash Extensions</u>**




**<u>Winks by Ardell Press On Lash</u>**




105. Included within the packaging for the Accused Products are written "How to Apply" instructions that explain, step-by-step, how to use the Accused Products, as depicted below:

**<u>Ardell Professional Press On Pre-Glued Underlash Extensions</u>**




**<u>Winks by Ardell Press On Lash</u>**



106. On information and belief, Defendant sells and offers to sell one or more components of the Accused Products, constituting a material part of the invention, knowing the same to be especially made and adapted for use in an infringement of one or more claims of the ’687 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

107. Defendant’s knowledge of these exemplary acts of induced and contributory infringement, as well as its knowledge of direct infringement, are further discussed below with respect to the willfulness with which Defendant has infringed the ’687 Patent.

108. Defendant’s infringement has been, and continues to be, knowing, intentional, and willful.

109. On information and belief, Defendant knew or should have known of KISS’s imminent patent rights when it began selling the Accused Products.

110. As of at least February 24, 2022, members of the public could see that KISS was seeking patent claims directed to artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments.

111. KISS sent Ardell a letter dated March 20, 2025, alleging that Ardell infringed the ’288 Patent.

112. Ardell received a letter from KISS on or shortly after March 20, 2025, alleging that Ardell infringed the ’288 Patent.

113. The claims of the ’288 Patent are directed to disclosed embodiments of the Shared Specification in which the adhesives element extends “from the support strip along the length of the eyelash filaments.”

114. An example of an embodiment that provides support for the claims of the ’288 Patent is depicted in Figure 1B of the ’288 Patent, which is reproduced below.




115. The claims of the ’687 Patent are directed to different disclosed embodiments of the Shared Specification than the claims of the ’288 Patent.

116. The claims of the ’687 Patent are directed to disclosed embodiments in which the adhesives element is “spaced apart from the bases of the plurality of eyelash filaments in a direction of a length of the plurality of eyelash filaments.”

117. Examples of embodiments that provide support for the claims of the ’687 Patent are depicted in Figures 1A, 1C, 1D, 2A-2C, 3A, and 3B of the ’687 Patent, some of which are reproduced below.


W
L
16
20
14
18
12b
12a
20
14
L
12
40
12
20
14
14
20
20




118. These images, and the fact that KISS was seeking patent claims directed to artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments, were publicly available since at least February 24, 2022.

119. On information and belief, Ardell copied one or more of the embodiments depicted in Figures 1A, 1C, 1D, 2A-2C, 3A, and 3B of the ’288 Patent when developing the Accused Products.

120. Figures 1A, 1C, 1D, 2A-2C, 3A, and 3B of the ’288 Patent are identical to Figures 1A, 1C, 1D, 2A-2C, 3A, and 3B of the ’687 Patent.

121. Below are side-by-side images of Figure 2A of the ’687 Patent and an exemplary Accused Product, with annotations added to identify the adhesive element and the support strip.

**’687 Patent, Figure 2A** | **Exemplary Ardell Accused Product**




122. On information and belief, Ardell and/or its counsel were monitoring the prosecution at the USPTO of the continuation applications that claim priority to the ’288 Patent during *KISS v. Ardell I*.

123. The ’010 Application published as U.S. Patent Application Publication No. US 2026/0013588 (“’588 Publication”) on January 15, 2026.

124. On information and belief, Ardell and/or its counsel were monitoring the prosecution at the USPTO of the ’010 Application as of at least January 15, 2026.

125. Claim 2 of the ’588 Publication recites “[t]he artificial eyelash system of claim 1, wherein the adhesive element is disposed at a location between the bases and the tips of the plurality of eyelash filaments such that the adhesive element is spaced apart from the bases of the plurality of eyelash filaments in a direction of a length of the plurality of eyelash filaments.”

126. On information and belief, Ardell and/or its counsel were aware, or should have been aware, of Claim 2 of the 588 Publication prior to April 23, 2026.

127. On information and belief, prior to April 23, 2026, Ardell and/or its counsel were aware, or should have been aware, that, in the ’010 Application,

KISS was seeking patent claims directed to artificial eyelashes with adhesive spaced apart from the bases of the plurality of eyelash filaments.

128. On April 23, 2026, KISS amended Claim 1 of the ’010 Application to recite that the adhesive element is “spaced apart from the bases of the plurality of eyelash filaments in a direction of a length of the plurality of eyelash filaments.”

129. On information and belief, Defendant has had knowledge, or should have had knowledge, that Claim 1 of the application for ’687 Patent recited that the adhesive element is “spaced apart from the bases of the plurality of eyelash filaments in a direction of a length of the plurality of eyelash filaments” since at least May 2026.

130. On information and belief, Defendant has had knowledge, or should have had knowledge, that it practices at least Claim 1 of the ’010 Application since at least May 2026.

131. The USPTO issued a Notice of Allowability for the claims of the ’010 Application on May 5, 2026.

132. On information and belief, Defendant has had knowledge, or should have had knowledge, that it practices at least Claim 1 of the ’687 Patent since at least June 2026.

133. The ’010 Application issued as the ’687 Patent issued on July 7, 2026.

134. KISS sent Ardell’s counsel a letter dated July 7, 2026, alleging that Ardell infringes at least Claim 1 of the ’687 Patent.

135. On July 7, 2026, Ardell’s counsel received KISS’s letter alleging that Ardell infringes at least Claim 1 of the ’687 Patent.

136. Ardell has had actual knowledge of its infringement of the ’687 Patent since at least July 7, 2026.

137. Despite this knowledge, Defendant continues to willfully import, make, use, offer to sell, and sell the Accused Products in disregard of KISS’s patent rights under the ’687 Patent.

138. Defendant's acts of infringement of the '687 Patent have caused and will continue to cause KISS damages for which KISS is entitled to compensation pursuant to 35 U.S.C. § 284.

139. Defendant's acts of infringement of the '687 Patent have caused and will continue to cause KISS immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. KISS has no adequate remedy at law.

140. This case is exceptional, and therefore, KISS is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

**WHEREFORE**, KISS requests judgment against Defendant as follows:

a) Adjudging that Defendant has infringed the '687 Patent, in violation of 35 U.S.C. § 271;

b) Adjudging that Defendant's infringement of the '687 Patent was willful;

c) Granting an injunction preliminarily and permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '687 Patent;

d) Ordering Defendant to account and pay damages adequate to compensate KISS for Defendant's infringement of the '687 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

e) Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

f) Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

g) Declaring this case exceptional and awarding KISS its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

h) Awarding such other and further relief as this Court deems just and proper.

Dated: September 25, 2026

By: /s/ Theodore W. Chandler

Theodore W. Chandler (Bar No. 219456)
<Ted.Chandler@BakerBotts.com>
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (213) 202-5702

Thomas C. Martin (*pro hac vice* forthcoming)
<Tommy.Martin@BakerBotts.com>
Lauren J. Dreyer (*pro hac vice* forthcoming)
<Lauren.Dreyer@BakerBotts.com>
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, DC 20001
Telephone: (202) 639-7700
*Attorneys for Plaintiff*
*KISS Nail Products, Inc.*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: September 25, 2026

By: /s/ Theodore W. Chandler

Theodore W. Chandler (Bar No. 219456)
<Ted.Chandler@BakerBotts.com>
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (213) 202-5702

Thomas C. Martin (*pro hac vice* forthcoming)
<Tommy.Martin@BakerBotts.com>
Lauren J. Dreyer (*pro hac vice* forthcoming)
<Lauren.Dreyer@BakerBotts.com>
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, DC 20001
Telephone: (202) 639-7700

*Attorneys for Plaintiff*
*KISS Nail Products, Inc.*